```
 1  want to give the wrong impression.
 2      Q    I don't think an answer is necessary.  I
 3  just wanted to bring that to your attention.
 4           Okay.  All right.  As we were talking
 5  about before the break, we were looking through the
 6  deposit material that you provided to us in the
 7  course of discovery that was allegedly submitted by
 8  you to the United States copyright office along with
 9  your application for registration; is that correct?
10      A    I think that's what we were talking about,
11  yes.
12      Q    Now, you sent us roughly 7,992 photos.  I
13  think, specifically, 7,992 photographs.  Does that
14  sound correct to you?
15      A    I know there's a lot.
16      Q    How is it that we're supposed to tell or
17  confirm that any of the photographs that you sent to
18  us in the course of discovery, which were allegedly
19  submitted with your registration application, were
20  actually submitted with your registration
21  application?
22      MR. HUTCHERSON:
23           Objection.  Form.
24  BY MR. REYNAUD:
25      Q    I guess my question is this:  You sent us
```

```
 1   a bunch of photographs, right, but that's all you
 2   sent us.  You could have sent us any number of
 3   photographs.  How do we know that the photographs
 4   you sent us were actually submitted with the
 5   copyright registration application?
 6        A    I don't know how you would know that.
 7        Q    Do you have any other document that might
 8   confirm that for us?
 9        A    I do not.
10        Q    Any other e-mail or correspondence with
11   the US Copyright Office that might confirm that for
12   us?
13        A    I do not.
14        Q    As the plaintiff in this lawsuit, why have
15   you not sought to obtain documentary proof that the
16   Tom Petty image in particular was part of this group
17   of photographs that were submitted?
18        MR. HUTCHERSON:
19             Objection to form and objection insofar as
20   it calls for privileged information in terms of work
21   product or attorney/client communication.
22   BY MR. REYNAUD:
23        Q    You can answer.
24        A    Can you repeat the question?
25        Q    Let's back up.  I'm going to ask that same
```

```
 1  without the protection order.  And those are the
 2  documents -- the photographs we just looked at,
 3  7,992 photos.
 4          My question is this:  How are we supposed
 5  to know that the photographs you submitted to us
 6  were actually the photographs you submitted as the
 7  deposit material?
 8      A   I don't know how you would know that.
 9      Q   Well, don't you think that's important for
10  us to know?
11      A   That would be -- I don't know.  That's an
12  opinion.  I think you could have gotten them
13  directly from the copyright office, but I don't
14  know.
15      Q   Can you get them from the copyright
16  office?
17      A   My understanding is you can.
18      Q   Can you, though?
19      A   I don't -- yeah, I'm certain that I can.
20      Q   Have you in the past?
21      A   One time.
22      Q   One time.
23      A   And then they were never needed.
24      Q   And where did you put those documents?
25      A   It's not documents.  It's just a -- it's
```

```
 1  just -- it's very much what you have, and it's for a
 2  different -- a different certificate.
 3      Q   It's a different certificate.  Okay.  And
 4  when you receive -- I'm assuming they were
 5  photographs; is that right?
 6      A   They're exactly what you -- just like what
 7  you have.  They just come on a disk.
 8      Q   There are 7,992 photographs on a disk.
 9          What about certified copies?  Have you
10  ever received certified copies of those photographs?
11      A   Yeah, I just --
12      MR. HUTCHERSON:
13          Objection.  Form.
14      THE WITNESS:
15          I just answered that, but not for this,
16  not for this certificate.
17  BY MR. REYNAUD:
18      Q   You didn't answer if you have certified
19  copies.  I never said the word certify.
20      A   Okay.
21      Q   We can have the court reporter to read it
22  back if you would like me to.
23      A   No, no, it's okay.  If you -- ask the
24  question again, please.
25      Q   Have you ever received certified copies
```

```
 1   from the US Copyright Office?
 2       A    I have.
 3       Q    And that was for this registration or a
 4   different registration?
 5       A    That was a different registration.
 6       Q    What do the certified copies look like?
 7   Are they different than the documents you just saw,
 8   or do they have some kind of certified label on
 9   them?
10       A    They come in a -- they come in a sealed --
11   my understanding -- what I got, and this is years
12   ago, came in a sealed plastic, hard plastic, like a
13   pouch.
14       Q    Okay.  Why not request those in connection
15   with this litigation?
16       A    Because it costs a fortune.
17       Q    Am I the first lawyer who has ever asked
18   you to produce certified copies or copies of your
19   deposit material?  I'm sorry.
20       A    I don't think that you're the first person
21   that's offered that or that's asked that, but what
22   has always happened in the past is the defendant
23   orders their own.
24       Q    Now, earlier, I asked you as the plaintiff
25   in this lawsuit -- and you are required to meet
```

 1   certain burdens of proof and your attorney can tell
 2   you all that.  That's not important here.  But my
 3   question relating to that is why have you not sought
 4   to obtain some sort of proof that the Tom Petty
 5   photograph at issue was included in the deposit
 6   materials submitted to the copyright office?
 7        MR. HUTCHERSON:
 8             Objection.  Form.
 9        THE WITNESS:
10             If you're asking me -- I don't know what
11   you're asking me.
12   BY MR. REYNAUD:
13        Q    Okay.  Was the Tom Petty photograph part
14   of the deposit materials in this case?
15        A    Yes.
16        Q    How are we supposed to know that?  Are we
17   supposed to take your word for it?
18        A    I don't know.  I suppose so or order --
19   you can order them yourself.  That -- my
20   understanding, what has happened in the past is we
21   stipulate that the photographs were involved in
22   there and we do that on -- everything is done under
23   perjury, even the application.
24        Q    So you're telling me that we should just
25   stipulate to the fact that there -- that the Tom

```
 1  Petty photograph was included as part of the deposit
 2  material?
 3       MR. HUTCHERSON:
 4            Objection.  Form.
 5       THE WITNESS:
 6            I don't know what that -- I don't know
 7  what I can conclude on that.
 8  BY MR. REYNAUD:
 9       Q    Why should we or anyone else believe that
10  the Tom Petty photograph was deposited?
11       A    I don't understand that question.
12       Q    Well, I guess I don't have -- you haven't
13  stipulated anything in this case, and even if you
14  did, why should we believe it?  Why should we
15  believe that the Tom Petty photograph is actually
16  part of the deposit material?
17       A    I don't know.  I -- you know.  The reason
18  that we are not here is not for me.
19       Q    It's not?
20       A    No.  Your client took the image.
21       Q    So the -- I'm sorry.  The reason we're
22  here is not because of you?
23       A    I misspoke on that, maybe.  I don't know.
24  I don't know why you're laughing at me, but...
25       Q    Well, because you are the plaintiff.  You
```

 1   filed the lawsuit.  That's why we're here, just like
 2   you have countless other times.  So that's why we're
 3   here, and it's not because of my client I guarantee
 4   that.
 5            So just to be clear, there is not a single
 6   piece of paper that you have or that you can think
 7   of, in your best custody or control or whatever,
 8   that might prove that the Tom Petty photograph is
 9   part of the deposit material; is that correct?
10       A    I -- the way that I understand your
11   question, I would say that I cannot -- I can't -- I
12   don't have a piece of paper that proves that.  I
13   have a copyright certificate.
14       Q    The certificate doesn't have the
15   photograph on it itself, does it?
16       A    No, no.
17       Q    So there's no piece of paper or document
18   or proof anywhere other than the certificate itself?
19       A    That's my understanding, yes.
20       Q    So I guess we should just take your word
21   for it?
22       A    I don't know what to tell you.
23       Q    When you said it cost a fortune to get the
24   deposits, the certified copies of the deposit
25   material, what are we talking here?  What's a