UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **LARRY G. PHILPOT,** | § | **CIVIL ACTION NO. 2:20-cv-02912** |
| | § | |
| *Plaintiff* | § | |
| | § | **JUDGE GREG G. GUIDRY** |
| **v.** | § | |
| | § | |
| **WHERE Y'AT MAGAZINE, LLC,** | § | |
| | § | **MAGISTRATE MICHAEL B. NORTH** |
| *Defendant* | § | |
| | § | |

MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT

Defendant, WHERE Y'AT MAGAZINE, LLC ("Defendant"), submits this memorandum of law

in support of its Motion for Summary Judgment filed against the Plaintiff, Larry G. Philpot ("Plaintiff

and/or "Mr. Philpot"), pursuant to FED. R. CIV. P. 56(a).

## I.      Preliminary Statement

This Motion for Summary Judgment (the "Motion") is as straightforward as a summary

judgment motion can be.[1] Plaintiff is a nationally notorious "copyright troll" who—much like in

the other 153 copyright lawsuits he has filed over the last 7 years—now alleges in this case that

his photograph of Tom Petty (the "Petty Image") is the subject of a certain copyright registration,

---

[1] Prior to filing this Motion, and even though there is no requirement for such under the Local
Rules, Defendant attempted in good faith to "meet and confer" with Plaintiff's counsel about the merits of
this Motion. Given that this is such a simple Motion, undersigned counsel sought to ascertain why Plaintiff
was resistant to Defendant's position. Rather than offer any rebuttal, however, Plaintiff simply refused to
engage. This is apparently typical conduct of Mr. Philpot, whose litigation abuses nationwide have been
well-documented. This limited "meet and confer" exchange, which was conducted via email on July 15-18,
2021, is attached as **"Exhibit A"** to the attached Declaration of Claude F. Reynaud III. All exhibits
referenced herein are attached to said Declaration of Claude F. Reynaud III, which serves as a compendium
of the attached exhibits.

namely, registration number VAu 1-164-624 (the "Operative Registration"), and that Defendant

has infringed his copyright in the same.

In order to prevail on a copyright infringement lawsuit, it is the Plaintiff's burden to prove

that the allegedly copyrighted work, which is the focus of the alleged infringement, is the subject

of a valid copyright registration. Thus, to meet his burden, Plaintiff must step forward with

admissible evidence including a conformed or verified copy of the deposit materials which support

the copyright registration. In this case, Plaintiff failed to produce admissible evidence prior to the

discovery cut-off sufficient to meet his burden, and as a consequence, judgment must be entered

against him as he cannot meet a required element of a copyright infringement claim.

Again, although not directly relevant to this Motion, it bears reemphasis that Mr. Philpot

has developed quite the reputation with federal courts all across the country as a less-than-candid

litigant (to put it mildly) who has adopted what can best be described as a scam that he uses to trap

unsuspecting defendants from whom he can then extract a settlement or, even worse, obtain a

default judgment. One federal district court recently described Mr. Philpot's scam as follows:

> An important factor here is that Philpot and his counsel are, in essence, copyright
> "trolls." Philpot has filed numerous actions nearly identical to this one not only in
> this Court, but throughout the country, and estimates that he has filed 50 such
> cases. *See Philpot v. WOS, Inc.*, 2019 U.S. Dist. LEXIS 67978, 2019 WL 1767208
> at *3 (W.D. Tex. Apr. 22, 2019).[2] His tactic is to place his photos on the internet,
> protected only with a "Creative Commons" license. This means that anyone may
> use the images for free, so long as they provide proper attribution to Philpot, along
> with proper identification of the image. 2019 U.S. Dist. LEXIS 67978, [WL] at
> *2. When users re-publish one of Philpot's images without attribution, he sues them
> for damages. In this suit, and in the others filed in this court, Philpot claims he is "a
> renowned freelance photographer," with a "reputation as a premier photographer."
> Dkt. No. 1 at ¶¶ 11-12. Claiming that use of his work without attribution causes
> him to lose business opportunities, and weakens his reputation, he requests
> significant monetary damages in these cases. His "standard" damage request

---

[2] The estimate that Mr. Philpot provided the court is not correct.  In fact, Mr. Philpot has filed at least 153 copyright cases in the last 7 years. Attached as **"Exhibit B"** is PACER/Court-Link search that identifies all of Mr. Philpot's copyright infringement lawsuits filed over the past 7 years.

appears to be $150,000 per photo use. In fact, however, as Judge Pitman found in the *WOS* case:

> [Philpot] has no training in photography and has never been employed full-time as a photographer; he works as a freelancer. He is formally affiliated with "OnStage Magazine," a company he created to gain access to bigger events, but which does not actually produce magazines or generate advertising revenue. He has never been hired to photograph a concert or other event. He is compensated for his work mostly in concert tickets, food, and drinks. Pressed to identify monetary compensation for his work, Philpot testified that once he did a shoot for a hidden-camera show and that he once earned $0.88 for an image of Prince that he took at a concert he paid $2,000 to attend. He sells prints of his photos but has made "not very much" money—possibly less than $100 total—doing so. He loses money on his photography work almost every year.

*WOS*, 2019 U.S. Dist. LEXIS 67978, 2019 WL 1767208 at *2. Further, when the *WOS* case was before the undersigned on a motion to compel, Philpot objected to producing financial records to demonstrate his alleged income from his freelance photography work. When the undersigned overruled Philpot's objections to producing tax returns, his counsel informed the Court that Philpot had not filed returns for several years. In sum, Philpot is far from a shining example of a litigant who uses the court system to vindicate important rights. Instead, he seems to want to use the courts as a blunt object with which to coerce nuisance value settlements from unsuspecting parties.

*Philpot v. Emmis Operating Co.*, No. 1:18-CV-00816-RP, 2019 U.S. Dist. LEXIS 112440, at *4-6 (W.D. Tex. July 8, 2019); *see also, e.g.*, *Philpot v. L.M. Communs. II of S.C.*, No. 5:17-CV-173-CHB, 2020 U.S. Dist. LEXIS 85901, at *8-11 (E.D. Ky. May 15, 2020) (noting that "Plaintiff has filed countless similar suits across the country, leading other courts to label him a 'copyright troll,'" and explaining that "Plaintiff's tactic is to place his photos on the internet, protected only with a 'Creative Commons' license," rather than, *e.g.*, being "right-click protected or protected by a watermark that would alert the potential infringer of the copyright," and then, "[w]hen a user re-publishes an image without attribution, he makes demand for payment or threatens litigation.").

Regardless of the foregoing, however, the undisputed facts in this case establish that Mr. Philpot did not produce a certified copy of the copyright deposit materials prior to the close of

discovery and therefore cannot meet his burden of proof. As such, judgment must be entered in favor of Defendant, with prejudice.

## II.     **Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, an any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgement as a matter of law. FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims…" *Id.* at 323-24. For issues where the non-moving party would bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party makes such a showing, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587. In such case, the test is whether the opposing party "has come forward with sufficiently 'specific' facts from which to draw reasonable inferences about other material facts that are necessary elements of the [opposing party's] claim. *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995); *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001) ("This obligation cannot be satisfied by conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than significantly probative.").

## III.     **Material Facts Not in Dispute**

In support of its Motion for Summary Judgment, and in accordance with Local Rule 56.1, Defendant submits concurrently herewith a separate and concise statement of the material facts that

are not in dispute. For the sake of convenience, these undisputed material facts are also reiterated immediately below. Specifically, the following material facts are not in dispute:

1)       The Petty Image, a copy of which is attached as **"Exhibit C,"** is the photograph which Plaintiff now alleges was infringed by Defendant. [R. Doc. 1].

2)       Copyright Registration No. VAu  1-164-624 (the "Operative Registration"), a true and complete copy of which is attached as **"Exhibit D,"** is that which Mr. Philpot claims relates to and protects the Petty Image under federal copyright law. [R. Doc. 1].

3)       Defendant specifically requested in discovery that Plaintiff produce the copyright deposit material that supports the Operative Registration, *i.e.*, the deposit material that was required to be filed with the U.S. Copyright Office in association with the subject copyright application and, thus, which ultimately matured into the Operative Registration. *See Defendant's First Set of Requests for Production of Documents to Plaintiff* ("Defendant's RFPD"), a true and complete copy of which is attached as **"Exhibit E,"** Request No. 2, at p. 4.

4)       Prior to the close of discovery on July 19, 2021, Mr. Philpot did not produce an original or certified copy of any of the deposit materials allegedly submitted with the subject copyright application. *See* the attached Declaration of Claude F. Reynaud III, at ¶¶ 10-11.

5)       When asked at his deposition how it could be determined or confirmed which photographs, if any, were actually submitted to the U.S. Copyright Office as part of the alleged deposit materials, Mr. Philpot could not be certain. *See* Plaintiff's Deposition Transcript ("Philpot Depo."), excerpts of which are collectively attached as **"Exhibit F,"** at pp. 80:25; 81:1-9.

6)       When asked at his deposition if he had any documents that could confirm which photographs were submitted as part of the subject deposit materials, Mr. Philpot said he had no such documents. [Philpot Depo., at pp. 80:25; 81:1-9].

**7)**      When asked at his deposition how anyone could determine whether the photographs he produced in discovery were the same photographs that had allegedly been submitted as the subject deposit materials, he said he did not know. [Philpot Depo., p. 83:4-8].

**8)**      When asked at his deposition how anyone could determine whether the Petty Image was actually part of the deposit materials, Mr. Philpot said he did not know other than to take his word for it. [Philpot Depo., p. 87:14-17].

**9)**      It was not until July 22, 2021, after the close of discovery, that Mr. Philpot notified Defendant that, contrary to his deposition testimony eight (8) days earlier, he did, in fact, have an alleged certified copy of the copyright deposit materials, at which time he produced electronically an alleged photograph of the same. *See* the attached Declaration of Claude F. Reynaud III, at ¶ 11; *see also*, the July 22, 2021 Cover Letter received from counsel for Plaintiff, a true and complete copy of which is attached as **"Exhibit G."**

**10)**      In sum, the undisputed evidence in this case demonstrates that, up and through the close of discovery, Mr. Philpot has failed to step forward and produce admissible evidence which would prove that the Petty Image is the subject of any copyright registration.

**IV.      Plaintiff's Copyright Infringement Claim Must be Dismissed because He Cannot Show that the Petty Image is the Subject of Valid Copyright Registration**

To prevail on a claim for copyright infringement, a plaintiff must prove two (2) elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361. Part of establishing ownership of valid copyright is showing that the work at issue has been registered with the Copyright Office; registration is a prerequisite to pursuing a federal infringement action. *See* 17 U.S.C. § 411(a) ("[N]o civil action for infringement of the copyright in any United States work

shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."). *See also Reed Elsevier, Inc. v. Muchnick,* 559 U.S. 154, 157 (2010). Furthermore, in order for an alleged copyrighted image to support a copyright infringement action, it must be included as a deposit accompanying the copyright application. *See* 17 U.S.C. § 408. In this case, because Mr. Philpot has no admissible evidence that the Petty Image was ever deposited with the U.S. Copyright Office, let alone any proof that the Petty Image was the subject of a valid copyright registration, his copyright infringement claim <u>must</u> be dismissed.

It is the *deposit* that frames the metes and bounds of a copyright registration. In other words, that which is deposited is that which is copyrighted. *See Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1062 (9th Cir. 2020). "The purpose of the deposit is to make a record of the claimed copyright, provide notice to third parties, and prevent confusion about the scope of the copyright." *Skidmore*, 952 F.3d at 1062, *citing Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1161-63 (1st Cir. 1994) (the deposit requirement provides the "Copyright Office with sufficient material to identify the work in which the registrant claims a copyright . . . [and] prevent[s] confusion about which work the author is attempting to register"). *See also*, *Report of the Register of Copyrights on the General Revision of the U.S. Copyright Law* 71 (1961) (one of the purposes of the deposit is "to identify the work" being registered). Thus, on the other hand, the copyright certificate, standing alone, tells the Court ***nothing*** about that which is actually the subject of the copyright registration. Without the deposit material, it is impossible to know what is copyrighted by simply referencing the certificate alone.  For example, the certificate for the Operative Registration in this case merely describes that which is copyrighted as "Concert Photographs through August 15. 2013." *See* the subject Registration Certificate, a copy of which is attached as "<u>Exhibit D</u>."

Importantly, in this case, **Plaintiff has no admissible evidence of what was deposited with the U.S. Copyright Office.** Defendant specifically requested in discovery that Plaintiff produce verifiable evidence of what deposit material(s) were submitted to the U.S. Copyright Office in support of the subject copyright application/registration. *See*, *e.g.*, Defendant's RFPD ("Exhibit E," Request No. 2, at p. 4. Only after extensive resistance, including burdening this Court with a nonsensical request that he be permitted to designate the publicly available deposit materials as confidential [*see* R. Doc. 16], and only after the Court warned him that attempting to do so would be sanctionable,[3] did Mr. Philpot produce his *own personal file* of 7,992 photographs from his own personal computer (the "Photo file"), which contains no demarcations as having actually been filed with the U.S. Copyright Office as the deposit materials that accompanied the subject copyright application. *See* the attached Declaration of Claude F. Reynaud III, at ¶ 11. Mr. Philpot alleges, albeit without any proof or evidence, that this Photo file was what was submitted in 2013 to the U.S. Copyright Office as the alleged deposit material. [Philpot Depo, pp. 80:25; 81:1-9; 83:4-8]. He also now alleges, also without any proof or evidence, that the Petty Image at issue was included within the set of photographs submitted to the U.S. Copyright Office in connection with the subject application. [Philpot Depo, pp. 86:13-18; 87:14-17].[4]

Mr. Philpot testified in his deposition that he does not have a certified copy of the deposit materials. [Philpot Dep pp. 84:25; 85:1-5]. He also testified that, of all the cases he has filed, only in one prior case had he ever even bothered to obtain the deposit material for his alleged copyright

---

[3] *See* this Court's Order dated July 8, 2021. [R. Doc. 26]. As we noted in our opposition to that motion, Defendant was not interested in lending any further support to Mr. Philpot's shakedown scheme. If Mr. Philpot was going to shake people down, he was going to have to submit himself to the bright lights of public litigation. [R. Doc. 19, p. 4].

[4] We should also note that, even if Mr. Philpot claims to know what was deposited, his testimony alone to that effect is insufficient as a matter of law to establish, in fact, that the Photo file was the deposit copy, since such testimony would be inadmissible under the Best Evidence Rule, F.R.E. 1002.

registrations. [Philpot Depo p. 83:4-21; p. 89: 4-5.][5] In this case, Mr. Philpot failed to produce a

certified copy (or any other kind of verifiable copy) of the subject deposit materials prior to the

discovery cut-off [Philpot Depo., p. 80:25; 81:1-9; *see* Reynaud Dec., ¶ 11],[6] and at his deposition,

---

[5] The Court may be wondering why we have gone to the effort of filing a summary judgment motion on what best could be described as a small claims case. Well, we did not start out with the intention to do that. If fact, we served a Rule 68 Offer of Compromise setting forth a more than generous offer of $4,000. [R. Doc. 12]. We did this, however, well before we knew the whole sordid history of Mr. Philpot as a nationally notorious "copyright troll." In what can best be described as looking a gift horse in the mouth, Mr. Philpot rejected the Rule 68 Offer and then resisted even the simplest discovery efforts on our part, such as producing the deposit materials. And so here we find ourselves having spent far more in defense costs than could ever be justified for the size of the case. As is evident by the fact that Mr. Philpot has filed over 150 cases and settled who knows how many more, we are an outlier who apparently has chosen to challenge Mr. Philpot. By Mr. Philpot's own admission, he has only once before sought to obtain deposit copies, and yet he has filed over 150 copyright lawsuits (and settled who knows how many more), which necessarily means that Mr. Philpot has collected an awful lot of money without ever having actually proven up his case. This dynamic is endemic in what has developed around the industry of copyright trolls. They have been paid off largely because it is too expensive to fight them. The only thing that will likely stop Mr. Philpot and others like him, is a defense judgment followed by an attorneys' fee award.

[6] While this may be information more appropriate for our attorneys' fees motion after this motion, it is frustrating to note that Mr. Philpot has flip-flopped in this litigation as to whether he actually was in possession of the deposit materials. In his initial disclosures, he represented that he had in his "possession, custody or control" the Deposit materials. *See* Plaintiff's Initial Disclosures, at ¶ 4(ii)(1), a true and complete copy of which is attached as **"Exhibit H."** Plaintiff then represented in his discovery responses that he had the requested Deposit materials and would produce them, but only subject to a protective order. *See Plaintiff's Responses to Defendant's First Set of Requests for Production* (attached as **"Exhibit I")**, Response No. 2. Then, in his baseless Motion for Protective Order, Plaintiff repeatedly implied that he had the requested deposit materials in hand and was ready to produce them upon entry of the desired Protective Order. [R. Doc. 16, pp. 3, 5, 17]. But then, at his deposition, Mr. Philpot testified that he actually did <u>not</u> have a certified copy of the Deposit material, and in fact, had never had any such copy in his possession. [Philpot Depo, p. 88: 5-13]. Now, *only after the close of fact discovery and after having testified under oath to the contrary*, Plaintiff's counsel has since notified Defendant that Mr. Philpot actually *does* have a certified copy of the deposit materials which he procured from the U.S. Copyright Office in 2018. As the Court is well aware, a party opposing summary judgment cannot contradict prior sworn testimony to create a trailable issue of fact. *Rojas v. Roman Catholic Diocese of Rochester,* 660 F.3d 98, 405-406 (2nd Cir. 2011). So, to the extent Plaintiff intends to try to salvage his position by advancing the notion that he now has admissible evidence in the form of verified deposit material, he cannot do so. Regardless of Plaintiff's current claim, it is undisputed that: 1**)** a verifiable copy the deposit materials were not produced prior to the discovery cut-off; and 2**)** Plaintiff testified under oath that he never had any such verified copy of the deposit materials in his possession. Plaintiff may seek to step forward now and offer a conformed copy of the deposit material from 2018 in support of his opposition to this Motion. But this Court should not consider that late submission for any purposes. *See Ferdman v. CBS Interactive Inc.,* 342 F.Supp.3d 515, 524-25 (S.D.N.Y. 2018) (precluding any evidence of deposit material that the plaintiff had withheld prior to the close of discovery when he attempted to put forth said evidence at summary judgment, and noting that "[t]o hold otherwise would give parties the perverse incentive to spring especially large and surprising disclosures on their adversaries on the eve of trial – an extreme version of the 'sandbagging' that Rule 26 attempts to avoid."); *see also*, *Agence France Presse v.*

he testified not only that he did not have any certified copy of the deposit materials, but also that he does not have any way whatsoever to determine which photos produced in discovery were actually submitted to the U.S. Copyright Office in connection with the Operative Registration. [Philpot Depo, p. 80:1; p. 81:1-9]. Indeed, Defendant solidified Mr. Philpot's lack of such evidence during his deposition, where Mr. Philpot specifically testified: 1) that he is not in possession of ***any documentary evidence or proof*** that the Photo file was in fact deposited with the U.S. Copyright office in association with the Operative Registration; 2) that he does not know and cannot in any way confirm what was actually submitted to the U.S. Copyright Office as the deposit material in association with the Operative Registration; and 3) that he cannot confirm (other than through his own self-serving testimony) that the Petty Image at issue was even actually deposited with the U.S. Copyright Office. Mr. Philpot's deposition testimony speaks for itself:

> Q:     Have you ever received certified copies [of the deposit material] from the US Copyright Office?
>
> A:     I have.
>
> Q:     And that was for this registration or a different registration?
>
> A:     That was for a different registration.
>
> ***
>
> Q:     Okay. Why not request those [certified copies] in connection with this litigation?
>
> A:     Because it costs a fortune.[7]
>
> ***
>
> Q:     I guess my question is this: You sent us a bunch of photographs, right, but that's all you sent us. You could have sent us any number of photographs. How do we know that the photographs you sent us [in discovery] were actually submitted with the copyright registration application?

---

*Morel* 293 F.R.D. 682, 687 (S.D.N.Y. 2013), and *Mantel v. Microsoft Corp.*, 2018 U.S. Dist. LEXIS 53549, 2018 WL 1602863.

[7] Philpot Depo., pp. 84-85.

A:     I don't know how you would do that.

Q:     Do you have any other document that might confirm that for us?

A:     I do not.[8]

***

Q:     My question is this: How are we supposed to know that the photographs you submitted to us were actually the photographs you submitted as the deposit materials?

A:     I don't know how you would do that.[9]

***

Q:     Okay. Was the Tom Petty photograph part of the deposit materials in this case?

A:     Yes.

Q:     How are we supposed to know that? Are we supposed to take your word for it?

A:     I don't know…[10]

***

Q:     Why should we believe that the Tom Petty photograph is actually part of the deposit materials?

A:     I don't know…[11]

***

Q:     So just to be clear, there is not a single piece of paper that you have or that you can think of, in your best custody control or whatever, that might prove that the Tom Petty Photograph is part of the deposit materials, is that correct?

A:     …I don't have a piece of paper that proves that. I have a copyright certificate.[12]

---

[8] Philpot Depo., pp. 80-81.

[9] Philpot Depo., p. 83:4-8.

[10] Philpot Depo., p. 86:13-18.

[11] Philpot Depo., p. 87:14-17.

[12] Philpot Depo., p.88:5-13.

In light of the undisputed facts and the law cited above, it is clear that Mr. Philpot is unable to prevail in this matter, as he is unable to sustain his burden of showing that the Petty Image at issue was actually registered as part of the Operative Registration. As explained above, Mr. Philpot has no admissible evidence that the Petty Image was ever deposited with the copyright office, let alone any proof that the Petty Image is part of the Operative Registration that he himself claimed in his Complaint relates to the Petty Image. [R. Doc. 1, ¶ 23]. Thus, pursuant to 17 U.S.C. § 408 and both *Reed Elsevier* and *Skidmore*, *supra*, Mr. Philpot's claim fails, as there is no proof that the Petty Image has been registered prior to the suit being filed. As such, judgment must be entered in favor of Defendant, with prejudice.

## CONCLUSION

For the foregoing reasons, Defendant requests that its Motion for Summary Judgment be granted in all respects.

Dated: August 5, 2021

Respectfully submitted:

**LEWIS BRISBOIS BISGAARD & SMITH, LLP**

*/s/ Claude F. Reynaud III*
Claude F. Reynaud III (#31534)
Claude.Reynaud@LewisBrisbois.com
400 Poydras Street, Suite 1300
New Orleans, LA 70130
Telephone: (504) 372-6660
Facsimile: (504) 754-7569

*/s/ Daniel C. DeCarlo*
Daniel C. DeCarlo (admitted *pro hac vice*)
Dan.DeCarlo@LewisBrisbois.com
633 W. 5th Street, Suite 4000
Los Angeles, CA 90071
Telephone: (213) 250-1800
Facsimile: (213) 250-7900

***Attorneys for Defendant, Where Y'At Magazine, LLC***

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that a copy of the foregoing was served upon all counsel of record via the CM/ECF System on this 5th day of August, 2021.


/s/ *Claude F. Reynaud III*

Claude F. Reynaud III